IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRYAN BURNETT** § | | **CIVIL ACTION NO. 3:21-cv-935** |
| *Plaintiff*, § | | |
| § | | |
| v. § | | |
| § | | |
| **SANTANDER CONSUMER USA, INC.** § | | |
| *Defendant*. § | | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

### I.     PRELIMARY STATEMENT

1. This is an employment discrimination lawsuit brought for violations of 42 U.S.C. §1981 and §1983 ("Section 1981" and "Section 1983"), as amended, the Civil Rights Act of 1991; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended ("Title VII"); the Americans with Disabilities Act ("ADA"), 42 USC §12101 et seq., as amended, the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §2601 et seq., as amended, and the Rehabilitation Act of 1973, 29 U.S.C. §701, et seq., as amended ("Section 504").

### II.     PARTIES AND SERVICE

2. During all times mentioned in this Complaint, Plaintiff Bryan Burnett ("Burnett") was and still is a U.S. Citizen who resides in Rockwall County, Texas. Burnett is a Black male.

3. During all times mentioned in this Complaint, Defendant Santander Consumer USA Inc ("Santander"), was and is a corporation organization authorized to do business in the State of Texas and was doing business in the State of Texas. Santander is an employer engaging in an industry affecting interstate commerce. Santander can be served through its registered agent CT Corporation System at 1999 Bryan St., Suite 900, Dallas, TX 75201.

### III. JURISDICTION

4. Jurisdiction is invoked pursuant to 42 U.S.C. §1331 based on federal question.

5. No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1983 (or 42 U.S.C. §1981).

6. All required conditions precedent required under Title VII (42 U.S.C. §2000e et seq.) have been exhausted and/or performed by Burnett prior to the filing of this complaint: Burnett filed a charge of retaliation on August 14, 2018 with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC"), within 300 days of the date of the retaliatory adverse actions for which recovery is sought that is complained of herein (the earliest of which occurred on May 22, 2018); the EEOC issued the Notice of Right to Sue on January 21, 2021. Burnett received the Notice of Right to Sue on January 26, 2021. Therefore, this suit is timely filed within the 90 days allowed from the receipt of this right to sue letter. See Exhibit A for Burnett's EEOC Charge and Exhibit B for his Notice of Right to Sue.

### IV. VENUE

7. This action properly lies in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1391(b) because the unlawful employment and labor practices were committed in this judicial district.

### V. FACTUAL BACKGROUND

8. Burnett joined Santander as a Dealer Relationship Manager ("DRM"), in December 2016. A DRM was generally responsible for working with dealership partners to secure financial lending opportunities in the areas of retail finance, wholesale finance, and leasing. This included day-to-day management of dealer accounts, assistance in the overall loan

process, and acting as a liaison between dealerships and the Original Equipment Manufacturer ("OEM") corporate offices.

9. Burnett was assigned to Santander's partner dealerships in East Texas. In 2017, during his first full year at Santander, Burnett's overall performance as a DRM consistently met Santander's performance expectations. He was even awarded the Circle of Excellence Award in 2017. The Circle of Excellence Award is given to DRMs who meet five particular metrics, and winners are invited to go on a cruise with other Circle of Excellence Award winners known as the "Circle of Excellence Cruise." As a 2017 award winner, Burnett was invited to go on the Circle of Excellence Cruise in the summer of 2018. Regardless of his accolades, Burnett received raises that were less than his white co-workers.

10. However shortly following these events, especially in the beginning of the year 2018, Burnett began experiencing hostility from Mr. Scott Daumer ("Daumer"; white male) the Regional Sales Manager of Santander who began directing racial epithets and slurs towards him. Daumer constantly reminded Burnett that he was a good fit as an employee only because he was a light-skinned black person or because he looked "Mulatto" and that there were many other more qualified applicants for his position. This was obviously not true because of Burnett's stellar performance in the previous year.

11. Consistently, Daumer told Burnett that his performance could not be as good as his white peers because he needed their leadership to be as good as they are. At the circle of excellence event, Santander Vice President, Dianne Irizarry (white female) told Burnett in front of other DRM's that Blacks don't get ahead in the company. She further stated that Burnett got the position due to his light skin while other qualified blacks had better resumes.

She also said that she was currently being sued by Mexicans, but she was not worried about it because her last name sounds Hispanic.

12. To cover up for its intended racially motivated ouster of Burnett, Santander instigated a series of frivolous claims against him ostensibly to show that his performance was on the decline. For instance, Santander would wrongfully accuse Burnett of spending far too much time sitting in his car and not near enough time inside the dealerships speaking with his assigned dealers and cultivating relationships. At the same time, Burnett was under specific express instructions from Daumer that a manager does not have to be sitting in front of the dealer the whole time he visits the stores but should instead "find a place to sit and spend time digging into applications and opportunities for that store."

13. On May 21, 2018, in a meeting with Mr. Daumer and Ms. Fayelanee Pickering, Senior DRM, Burnett complained that his assigned dealerships were too far apart, and that he had to drive too much and for long periods. Instead of providing a solution to the problem, Daumer realigned dealers only for white DRM's to help in their productivity but took away closer dealers to Burnett and gave him smaller dealers who were located much further apart. This made his work more strenuous, caused him to need to work longer hours, and limited is productivity.

14. Burnett noticed that non-minorities were allowed to work from home on inclement weather days but forced him to travel even during a winter storm.

15. Also, Burnett was denied bonuses that white employees received such as for dealership floorplans.

16. Mr. Daumer went on a ride-along with Burnett to evaluate this performance. On the ride-along, Daumer would complain about the long drives between dealerships, wanted to cut

the trip short, and stated that the dealerships were too far apart to be productive. Burnett was also harassed for making food stops while driving between dealers. He needed to eat small snack throughout the day to regulate his diabetes, but Daumer belittled him and said that he would only allow Burnett to have three meals per day. At other times, Daumer would degrade and belittle him by calling him "pussy," "weakling," and "sickly."

17.     Burnett made multiple complaints to the HR line about the harassment, discrimination, bullying, and hostility that he endured on so many occasions, but nothing was done to relieve him of the taunting and discrimination. HR contacted him once to take a statement, then Daumer contacted him to let him know that he knew about the complaints and that his friends work in HR and tell him everything. Daumer also threatened to get him fired and prevent him from going on the company cruise referenced in paragraph 9. Burnett reported these threats and retaliation to HR without resolution. He was removed from the cruise.

18.     Due to the ongoing hostility, stress, anxiety, and uncontrolled blood sugar, Burnett applied for FMLA. Even with his physician's report, he was initially denied leave. On May 23, 2018, his request for FMLA was finally approved. His initial estimated return-to-work date was July 18, 2018 but was extended until August 2018. Burnett's physician report also referenced a complete evaluation dated June 14, 2018, where it was discovered that, in additional to diabetes and bipolar disorder, Burnett had symptoms of Generalized Anxiety Disorder caused by his toxic and abusive work environment. He was recommended for group therapy. Santander's conduct was clearly severe and pervasive to the detriment of Burnett's health and mental well-being.

19.     On August 14, 2018, Burnett filed his EEOC Charge for discrimination and retaliation based on race, color, and disability.

20. On August 20, 2018, Burnett submitted a request for extended leave as a workplace accommodation under the ADA to address his diagnosed anxiety and depression, asking that he be permitted to stay on leave from August 15, 2018 through October 31, 2018. His request was denied. The denial was communicated to Burnett through a letter dated August 30, 2018. Santander also advised Burnett that, as of August 14, 2018, his leave was no longer protected and, therefore, any additional absence would be subject to Santander's Attendance Policy.

21. Whereas the letter communicating the leave denial was dated August 30, 2018, it was not mailed to Burnett until September 5, 2018 at the earliest via regular mail because the postage stamp on the envelope containing the letter was dated September 5, 2018. Notably, Burnett was terminated on September 5, 2018.

22. Therefore, Burnett's employment was purportedly terminated for nonattendance before he was even made aware that his request for extended leave was denied. To further demonstrate the discrimination was premeditated, the August 30 letter stated that as of August 14, 2020, Burnett's leave was no longer protected and, therefore, any additional absence would be subject to Santander's Attendance Policy. This implies that the leave of absence began accruing at least sixteen (16) days before the date of the letter notifying Burnett of this position. Incidentally, the date of denial of his leave coincides with the date that Burnett filed his EEOC charge against Santander.

23. Burnett has been harassed, discriminated against, and retaliated against by Santander based on his race, color, disability. and for engaging in protected activity.

## VI.   CAUSES OF ACTION

24. Plaintiff incorporates and re-alleges paragraphs 1-22 herein.

25. Because Burnett was harassed, discriminated against, and retaliated against due to his race, color, disability, and his engagement in protected activity, Santander has intentionally, maliciously, and willfully violated Section 1981, Section 1983, Title VII, the ADA, the FMLA, and Section 504.

26. Because Defendant's decision to terminate Burnett was made in retaliation for his previous participation in protected activity, Defendant willfully violated Section 1981, Section 1983, Title VII, the ADA, the FMLA, and Section 504.

27. But for his engaging in protected activity under Section 1981, Section 1983, Title VII, the ADA, the FMLA and Section 504, Santander would not have retaliated against Burnett or subjected him to a hostile work environment (harassment) and eventually terminating his employment.

## VII.   JURY DEMAND

28. Plaintiff requests that this action be heard before a jury.

## VIII.   PRAYER

29. WHEREFORE, Burnett prays that this Court:

a. Declare the conduct engaged in by Defendants be in violation of Section 1981, Section 1983, Title VII, the ADA, the FMLA, and Section 504;

b. Grant declaratory, injunctive, and equitable relief;

c. Enter judgment against Defendant;

d. Enjoin Defendant from engaging in such conduct;

e. Reinstate Plaintiff or in lieu of reinstatement, order front salary and benefits for the period remaining until normal retirement;

f. Award Plaintiff equitable relief of back salary and fringe benefits up to the date of termination and prejudgment interest for that entire period, or front salary and benefits accrual;

g. Award Plaintiff compensatory damages;

h. Award Plaintiff costs and attorney's fees;

i. Grant Declaratory, injunctive, and equitable relief; and

j. Grant such other relief as it may deem just and proper.

Respectfully submitted,

**Howard Law Firm, PLLC**

*/s/ Nichole C. Howard*
Nichole C. Howard
Texas Bar No. 24110018
603 E. Fernhurst Dr., Suite 1204
Katy, Texas 77450
Telephone: (346) 702-4344
Facsimile: (346) 245-8037
Email: nichole@nhowardlaw.com
ATTORNEY FOR BRYAN BURNETT